Ready? Glade Creek Partners v. Commissioner 23-14039. Ms. Ellis here for the appellant. Mr. Sheehan here for the appellee. Ms. Ellis, whenever you're ready. Thank you, Your Honor, and may it please the Court. My name is Emily Ellis, and I represent the appellant, Glade Creek Partners, in this case. This case is about three tracts of land in Bledsoe County, Tennessee. Tracts two and three were preserved in perpetuity through a conservation easement. Tracts two and three were donated to Glade, contributed to Glade by Hawks Bluff. Hawks Bluff also owned tract one. Tract one had infrastructure throughout the property. It had roads. It had a spine road throughout the property. It had utilities. It was divided into lots, and there were sales of those lots. Tracts two and three had none of these. After the first trial, the tax court determined that the fair market value of the rights donated by Glade over tracts two and three was $8.8 million. That value was affirmed by this court. Then, on remand, the tax court limited Glade's deduction, due to an exception to 170 called 170E, limited Glade's deduction to $3.7 million. There are four issues before this court. The first is whether the tax court erred in finding that tracts two and three were inventory property in the hands of the contributing partner immediately before it was contributed to Glade. The second is whether the tax court erred in failing to consider that respondent or the commissioner had the burden of proof. So let me just, I don't mean to interrupt your outline, but I guess I think I'm curious about issue two, which I take to be what I'll call the 724 issue, right? Whether this is inventory slash income or an investment property, and thus maybe potentially long-term capital gains, which would affect your ability to deduct it out under 170, correct? Yes, Your Honor. Okay. So I think if I understood your briefing correctly, you basically said some version of like 724 has nothing to do with this because there was never a disposition of the property. Yes, Your Honor. I don't think I understand that because I thought the point of 724 was, what would this have been? How would it have been considered had there been a disposition of the property? I think everybody recognizes there was never a sale of the property. That's the whole point, right? That's the reason we're here talking about this became a conservation easement, but had it not been donated and instead had been sold off, what would it have been then? So what am I missing? Your Honor, I think the hypothetical sale comes into play on 170E and not 724B. Nothing in 724 requires you to consider a hypothetical sale, but the plain language of 724B talks about any property which has contributed to the partnership upon the disposition of such property. And those are the key words here, that the easement was not the property that was contributed to Glade. It was instead the property in Fee Simple and the Fee Simple was not disposed of. For 724B to apply, the Fee Simple of the property would have had to been disposed of, but Glade owned Tracts 2 and 3 both before and after the easement. And, you know, the Supreme Court stated in a... But so I don't get that because when the Fee Simple is contributed, is it necessarily true that the right to grant easements on the property is also contributed? Yes, Your Honor, but 724B would come into play if the property itself was donated, but the property itself wasn't donated. It was a restriction to use that property. So 724B would only come into play if the Fee Simple was donated. But explain that to me because I thought you were saying, maybe I'm just misunderstanding, I thought you were saying that you think that 724B would only come into play because the disposition of property was a Fee Simple disposition of property instead of the easement disposition of property. The property contributed was a Fee Simple. The property contributed was the... Right. Was an easement over the property, a conservation easement, which is a restriction on the use. Yeah, and I guess my point is that isn't the contributed property is the whole property, all the rights to the property. So it's not a one-to-one disposal of property easement, Fee Simple contribution, but the easement is a part of the Fee Simple contribution. Your Honor, the easement is a part of the Fee Simple contribution, but Congress has, or I'm sorry, the Supreme Court has stated in Azhar v. Alena Health Services that when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout. So here, when Congress said property and such property, it has to mean the same property, but we're not taught the property was never disposed of. And the Supreme Court went farther in Azhar v. Alena Health Services and said courts do not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes. So Congress could have said, you know, any rights upon that property, but it didn't. It said such property. So property and such property have to mean the same thing for 724B to apply. Moreover, you know, 724B states that it applies when determining a gain or loss. It does not state that it applies when it's applicable for deductions. Did you raise that in the district court? No, Your Honor. We did not raise these statutory arguments in the district court. We shouldn't consider them, right? No, Your Honor. You should consider these issues because in Finnegan v. Commissioner, which was a decision of this court, that named five different reasons that, you know, the circuit court can appeal or can look at questions. And one of those... Can. Has discretion to. Yes, Your Honor. Right. And I assume you're arguing miscarriage of justice. Yes, Your Honor. So it's a miscarriage of justice. If I counted seven, maybe it's six lawyers haven't raised this throughout. Mr. Rhodes and Ms. Levin, both of them the best tax lawyers in America. If you look at the website, he's given half dozen or more speeches. He's written articles about them and all that. And it would be a miscarriage of justice if we didn't excuse the procedural default by not raising this issue in this case. Yes, Your Honor. To be candid, you know, we didn't think the inventory issue applies to Tracts 2 and 3 at all. So when the case went before the tax court, we didn't think that they could ever determine that Tracts 2 and 3 were inventory because the issue had been, you know, talked about several times. The tax court said it could and you didn't do anything about your inapplicability issues. You didn't raise these issues. Right, Your Honor. But in this Finnegan v. Commissioner case that was before this court, it determined that it wasn't prejudicial to respondent because the case, it determined it was prejudicial to respondent in Finnegan v. Commissioner because the case would have had to be retried. In this case, these are pure questions of law. Whether 170E and 724B applies to dispositions of easements. Yeah, but also Chief Justice Rehnquist one time when he's setting out the original procedural default rules, and that albeit in criminal cases, but still same principle, said the reason we require attorneys to object under sanction of not being able to raise the issue later is we want the trial court to be the main event. We want things to happen there, which may abrogate the necessity of an appeal. And we, who knows? Trial court might have agreed with you and we wouldn't be here. Your Honor, both of these issues were raised in Oconee Landing v. Commissioner in the trial court and the tax court summarily rejected that. That's not your case? No, Your Honor, but Oconee Landing is appealable to this circuit and it will be before this circuit if this court decides not to hear these, not to decide these issues today. So the issue is coming before this court and it would be- But the main event in this case won't be the tax court if we were to buy your argument in reverse on these inapplicability issues. Yes, Your Honor, that's true. But it would result in a miscarriage of justice because as determined by the tax court, the fair market value of the property was $8.8 million. And then the value was limited to $3.7 million. You know, that's property right of Glade is, you know, the ability for them to deduct the full fair market value. So that is a miscarriage of justice. Everybody who forfeits an issue on appeal loses something. I mean, it wouldn't be appealing if they didn't want to raise the issue. I've taken up enough of your time. Could you address the inventory issue? So let's, I mean, the tax court said this was inventory. And I think you started by mentioning you wanted to address that. Why isn't the tax court's determination that this was inventory correct? Your Honor, the tax court was incorrect because the facts of the tax that the tax court found was that Mr. Vincent, who was the manager of Hawks Fluff, tax court found that he did not have either the money or the desire to develop the easement property here. And then the tax court went farther and stated that Mr. Vincent was looking for other uses of the property. He was considering selling timber on the property. He was considering donating an easement over the property. The tax court never found that Mr. Vincent's intent was to hold the tracks two and three for sale in the ordinary course of business. That should have been the beginning and the ending of the tax court's inquiry because the purpose of the Winthrop factors is to determine the intent. But the tax court didn't stop there and continue to look at the Hawks Fluff's tax return, which did characterize the sale of the partnership interest as inventory. However, the tax return was inconclusive at best. Not only did the Hawks Fluff actually, you know, do the inventory, but it also took the full deduction for the easement, meaning that it considered the property a capital asset. So placing such great weight on a tax return, that was not, that was not conclusive on the issue was, you know, erroneous. But I mean, please go ahead. Well, I was just going to say with respect to the factual finding that you're talking about, the district court's determination that the, that the tax return mattered and its view showed that this was inventory. You agree, I assume, that that, that we would have to conclude that that factual finding was clearly erroneous? No, Your Honor. We think that the tax court placed too much weight on that finding of fact. Not that, that was a clearly erroneous determination. You think it was an accurate determination? At least for purposes of this appeal, you're not contesting the accurateness of that determination. No, Your Honor. The tax return did characterize the sale of the partnership interest. I don't contend that the partnership Hawks Fluff was correct in its, you know, reporting of, of the sale of the partnership interest. But the tax court did correctly find that that's what Hawks Fluff did.  Well, I just, to look at this more broadly, I mean, why isn't this inventory? I mean, you've got a real estate developer that owns this property. I mean, I realize it's been transferred a couple of times, but it's not property that someone purchased for the purpose of investment, right? Your Honor, I think this is inventory for, not inventory for two reasons. First, it's because Mr. Vincent did not have either the money or the desire to develop the easement property here. And if you don't have the desire to develop Tracts 2 and 3, it's not held for sale ordinarily in the course of business. And second, Tracts 2 and 3 were segregated from Tracts 1. You know, as a prior division of this court noted in Suburban Realty, and I see my time has expired. Can you just wind up quickly your answer to Judge Brasher? Yes, Your Honor. As this prior division of this court stated in Suburban Realty, if a taxpayer who engaged in high-volume subdivisions sold one clearly segregated tract in bulk, he might well prevail in his claim to capital gain treatment on the segregated tracts. It's clear that Tracts 2 and 3 were segregated here, and they were disposed of in bulk. Thus, it was not inventory property. Okay, there were all kinds of interconnections. They spent money from the get-go on three tracts. On a lot of three tracts. They did spend money on the development of Tracts 1 that benefited Tracts 2 and 3, Your Honor. But the development ended at the boundaries of Tract 1. It never went into Tracts 2 and 3. Tracts 2 and 3 were raw land at the time of sale. Okay, very well. You've got three minutes of rebuttal. Mr. Sheehan, let's hear from you. Yes, may it please the Court. I am Anthony Sheehan, and I represent the Commissioner of Internal Revenue. There are three points that came up in the opening that I would like to cover today. First, on the issue of waiver, as Judge Karnes has elaborated, the issue of the application of the statutes was involved even before this case started. In this case, had a small number of principal people who are involved in all these entities. And at a conference with the lawyer planning the transaction, it was pointed out, you've got to watch out for these statutes. It was in the private placement memorandum. The Commissioner made no secret about that it was relying on these statutes. But Glade decided to pursue the factual argument throughout the tax court. And it is not a miscarriage of justice to hold them to their choice of litigating strategy. I think, I guess I took her ultimately to say, okay, maybe it's not miscarriage of justice, but you're about to have this issue before you might as well go ahead and decide it. So maybe she's trying to travel under the separate exception and access now that says, you know, questions of great import or whatever. Why not that? I would say two reasons. If it was such a great importance, it should have been argued below. And secondly, this court can still adhere to its Finnegan precedent with confidence. Oconee is actually before this court right now. Their opening brief is due later this month. And so the court will very soon be able to both adhere to Finnegan and address this issue. Do you know if they raised the issue in the other case? I believe so, yes. That was the case my friend referenced where the tax court did reject their arguments. Raised or not, it was addressed. It was addressed in the opinion. Of course, their brief is due later and we don't know what they're going to say. But there's every reason to expect that this will soon be before the court. But if we are going to look at these statutes, I'd like just to take a moment to address the 724B and 170E issues here. 724B, if Glade had sold the property, sold it outright, there's no question that it would have been recharacterized. And I'm assuming here for the sake of this argument that the property is inventory because we're dealing with the law here. We'll get to the facts and the factual issue later. No question that if Glade had sold it outright, it would be ordinary because it was inventory in Hawksbluff's hands. Secondly, if Glade had made a full donation of the fee simple, the same property, then you would say, you'd look at 170E1 and it says, what would the treatment have been had it been sold? Well, because it was a partnership contribution, the treatment in a sale we just covered, it would have been inventory, ordinary income, you'd be limited to your basis. Which shows a fundamental problem with the Glade's position here in that if they had given away the entire property, they'd be limited to their basis in the full property, which is like $3.8 million. But now they're arguing that by putting what they call a mere restriction on the property, they get a deduction of $8.8 million. And they're using anti-abuse statutes to get there. But here, of course, we have the donation of an easement. And if we could just trace through the statutes here. Working forwards, you've got E1, now 170E2 gives a basis allocation rule for a charitable donation of less than an entire interest. 170F disallows deductions for partial interests in property. But they have an exception. One of the partial interests you can take a deduction for is a qualified conservation contribution. 170H1CapA defines qualified conservation contribution as a qualified real property interest. And then 170H2C defines a qualified real property interest as including a restriction granted in perpetuity on the use which may be made of the real property. In other words, a conservation easement. So working backwards, a conservation easement is a qualified real property interest, which is a partial interest in property, which is less than the entire interest of property, for which 170E2 gives a basis allocation rule for applying 170E1. So we would say that taking these statutes together and looking how they all fit together, the donation of a conservation easement is subject to 170E1. Indeed, going back to 1980, in the cases we cited in our brief, there have been limitations to donations. of conservation easements because of 170E. Moving on to the factual issue, I don't think it's entirely accurate to say that all the developments stopped at the border of Tracts 2 and 3. This was a phased development, not a segregated development. When you say factual issue, you mean the question about whether this is inventory or not, right? Yes, Your Honor. You know, I've got to say, I sort of viewed that as a factual issue too, but it looks like that's actually a legal conclusion. That maybe they're independent factual determinations, but ultimately the determination of whether something is inventory or not is a conclusion of law. Am I wrong about that? Well, this court in Boree said that it is a question of fact whether the taxpayer intended to hold the property primarily for sale, the ordinary course of business, or for investment purposes. So I invite you to... So on the intent of the taxpayer, that's a factual question? Yes. Okay. Yeah, but then when you get all the factual predicates settled, in fact findings, the ultimate conclusion and determination is a matter of law, or it's reviewed as though it were a matter of law. All I could do is go back to what the court said in Boree. We are looking at the intent of the taxpayer. We're looking at how they held the property. But I mean, this is what we said in Boree, though this is a quote from that case. The determination of whether income derived from the sale of a property is subject to taxation as ordinary income or as capital gains is a legal conclusion, right? Okay, well... And so isn't that... How is that different than the question whether it's inventory or not? I was reading Boree as, you know, doing what I kind of did before in tracing through all the statutes. Okay. But when it gets down to how did the taxpayer hold it, what was it to the taxpayer? If it was inventory, then it's ordinary as a matter of law. If it was something else, but I'm here talking really about the taxpayer's intent and how it held it. This was, again, a phased development. It was not segregated. All three tracts had lots plotted on them. They weren't registered to say on two and three to save on property tax, but lots were plotted. Soil testing was done on all three. Legal permits were obtained for all three. Infrastructure, six million dollars of infrastructure, not just enough for tract one, we'll wait and see, but electricity and water was brought in sufficient to service all three tracts. So in this case... Could you explain something to me that is just...  I mean, so there are three entities here, right? Right. Which entity's intent are we looking at for this question? In this case, you'd be looking at the intent of Hawks Bluff. Okay. Because it's the partner that made the contribution. Yes. And so did Hawks Bluff subdivide and, you know, do roads and electricity and things like that? I would answer that question this way. It started off in 2006 with ILC. Hawks Bluff took it over. Same people were involved, but Hawks Bluff took it over when ILC couldn't handle it anymore. But there's no evidence in the record that from asking questions when all these witnesses were there or from Hawks Bluff's books and records that they ever moved this chunk of property over. The only evidence we have of how they characterized and saw this property was their own income tax return contemporaneously documenting this transaction. And in that income tax return, they described themselves looking at the factors under 221A1 as being in the trader business of being a real estate dealer. They took a write-down of inventory. They called it inventory. They took a write-down of inventory to get an ordinary loss. Now, I know my friend might come up on rebuttal and say, well, they also took a full deduction. But in this case, Hawks and Glade had different CPAs. The inventory representation would come from Hawks' own books and records. The deduction was a third-party information return. So I would say that their own representation of how they were holding the property. So just to go back to sort of the improvements and the subdivision and all that kind of stuff, how can we consider that? And maybe there is a good reason to consider it if it wasn't Hawks that did that stuff. So just let me give you a hypothetical. Let's just assume that there's some defunct real estate developer out there that has subdivided lots and has built a bunch of roads and stuff. And maybe that's why they went bankrupt, right? They did all this kind of stuff. And then it got sold to somebody else. And they said, oh, I realize I'm buying this. They were trying to subdivide it and sell it and stuff. And I'm just buying it to hold it as an investment. I have no real intention of selling it off as inventory. Is that not like a possibility that could happen? It is certainly a possibility, Your Honor. And suburban realty, the court said there always remains a certain irreducible ad-Hawkishness about this area. So here the difference is that just it was the same people involved? Or like why would we like look at what they did previously to Hawks Block? Two reasons. One, the same people involved. You've got the continuity there. You've got to look and see it started off as inventory. Did it ever change? Did they ever decide to treat it differently? And secondly, as the tax court pointed out in Glade 1, when the issue was valuing the property, valuing the easement, it was portrayed as a fully approved, shovel-ready development property to capture the fair market value of giving up those development rights. Then we get to Glade 3 and now it's failed. It's failed in empty land and nothing happened there. And while we did not argue estoppel, certainly the tax court was not, as a trier of fact, could take that into consideration in weighing the facts and arguments. And I see if there are no further questions, then we'd rest on our brief and ask the court to affirm. Very well. Thank you so much. Ms. Ellis, you've got your three minutes of rebuttal remaining. Thank you, Your Honors. I'd like to focus on my friend on the other side, the intent he was discussing. And the tax court did find Mr. Vincent's intent. Mr. Vincent, the manager of Hawks Bluff, and the tax court determined that he did not have either the money or the desire to develop the property. And moreover, once Hawks Bluff got the property, Hawks Bluff didn't do anything to the property. They were looking for a way to monetize the property by selling timber over the property or donating an easement. But they never considered dividing the property into lots because he did not have either the money or the desire to do that. And then again, I'd like to point that respondent or the commissioner, he's focused on a lack of evidence. And the burden of proof should have been shifted to the IRS in this case under 7491. But the tax court failed to do that. And that alone is error for this court to reverse and remand for reconsideration. Because the tax court did focus on an alleged lack of evidence presented. Because it said the petitioner has failed to present any evidence that ILC or Hawks Bluff treated the easement property as investment property in its books and records. But if respondent, the IRS, had the burden of proof, you know, it would have been respondent who had failed to produce that evidence and not Glade. Additionally, on the 170E issue, the commissioner points to 170E2. And talks about how, you know, it's erroneous that the fee simple donation of the property would be treated differently than an easement. But it's Glade's contention that Congress treated qualified contributions, qualified conservation contributions differently all the time. Yeah, but that doesn't, I mean, and maybe this doesn't matter for a statutory interpretation point. But I mean, it makes very little sense that you get a bigger tax write-off for getting less of a property interest than for a greater property interest. I mean, that makes very little sense, right? If you just gave the property to a, you know, national trust that maintains property for conservation purposes, you get $3 million. If you give an easement, but you actually maintain fee simple interest, you get $8 million. Why would that be the law? Your Honor, I think if you donate the property in fee simple to a trust, there's no guarantee that it's preserved in perpetuity. If you donate a conservation easement, there is that guarantee because nobody can ever develop the property. Additionally, when you look at 170, I think it's B1E, you know, Congress specifically allowed deductions for conservation easements, qualified conservation contributions to be carryover for 15 years as opposed to the ordinary rule of five years. And then they also allowed a deduction up to 50% of AGI as opposed to 30% of AGI for a regular fee simple deductions. So it's clear that Congress views these two contributions differently and it's shown in the statute itself within the four corners of the statute. So this court doesn't have to look beyond those four corners. I see my time has expired. If there's no further questions. Okay, very well. Thank you so much. Both sides, that case is submitted. We'll be in recess until 9 a.m. tomorrow morning. All rise.